UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

CHARLES P. LEGER,

      Plaintiff,

vs.                                                                  Case No.: 5:21cv78/RV/ZCB

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

This is a Social Security appeal under 42 U.S.C. § 405(g).  Plaintiff Charles

P. Leger seeks judicial review of the Commissioner's final decision denying his

claim for a period of disability and disability insurance benefits.  Because the

Commissioner's decision is supported by substantial evidence, the undersigned

respectfully recommends it be affirmed.

### I.    Procedural History

Plaintiff first applied for a period of disability and disability insurance benefits

in the summer of 2019.  (Tr. 159-65).[1]  Plaintiff's initial application for benefits

---

[1] Citations to the administrative record filed by the Commissioner are designated as
"Tr."  The page numbers cited herein are those found on the bottom right corner of
each page of the transcript, rather than the page numbers that were assigned by the
Court's electronic docketing system.

1

alleged an onset date of December 31, 2010. (Tr. 159). His date last insured was June 30, 2015. (Tr. 12). The Social Security Administration (SSA) initially denied his claim on October 4, 2019, and again on reconsideration on January 7, 2020. (Tr. 67-75, 77-87). Plaintiff requested a hearing before an Administrative Law Judge (ALJ). That hearing was held telephonically on August 27, 2020. (Tr. 27). At the hearing, Plaintiff amended his onset date to June 18, 2015. (Tr. 31-32). On November 12, 2020, the ALJ issued a written decision finding Plaintiff not disabled. (Tr. 10-16). The Appeals Council denied Plaintiff's request for review on March 3, 2021. (Tr. 1-4). The ALJ's decision now stands as the final decision of the Commissioner. Plaintiff has timely requested judicial review under 42 U.S.C. § 405(g).

## II.    The Legal Framework

"Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The SSA has established a five-step sequential process to determine whether a claimant is disabled. *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. § 404.1520(a)(4).

First, the Commissioner must determine whether the claimant is engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  If so, the Commissioner will find that the claimant is not disabled.  20 C.F.R. § 404.1520(b).  Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner will determine the severity of the claimant's impairments or combination of impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  To be disabled, a claimant must have a "severe impairment," which is an impairment that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).

Third, the Commissioner evaluates whether the claimant's severe impairment meets or equals an impairment listed in Appendix 1 to subpart P of Part 404 of the regulations (the "Listing").    20 C.F.R. § 404.1520(a)(4)(iii).    Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  Fifth and finally, the Commissioner determines whether the claimant's residual functioning capacity, age, education, and past work experience prevent the performance of any other work in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).

The claimant bears the burden of proof at the first four steps.  *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278 (11th Cir. 2020).  If the claimant establishes the first four steps, then the burden shifts to the Commissioner at step

five to show the existence of other jobs in the national economy that the claimant can perform. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1321 (11th Cir. 2021). If the Commissioner carries this burden, then the claimant must prove that she cannot perform the work identified by the Commissioner. *Goode*, 966 F.3d at 1279.

### III.    The ALJ's Decision

The ALJ found that Plaintiff had not engaged in substantial gainful activity from his amended alleged onset date[2] through June 30, 2015, his date last insured. (Tr. 12, Finding 2). At step two, the ALJ found that Plaintiff suffered from facet arthropathy of the lumbar spine and left cervical arthropathy. (Tr. 12, Finding 3). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13, Finding 4). The ALJ then found that Plaintiff had the residual functioning capacity to perform medium work as defined in 20 C.F.R. § 404.1567(c). (Tr. 13, Finding 5). At step four, the ALJ found that, based on Plaintiff's residual functional capacity, he was unable to perform any past relevant work. (Tr. 15, Finding 6). At step five, the ALJ found that Plaintiff's age, education, work experience, and residual functional

---

[2] The ALJ's opinion states that the amended onset date was June 14, 2015 (Tr. 12), but that appears to be a typographical error. At the hearing, Plaintiff stated that he wished to amend the onset date to June 18, 2015. (Tr. 31).

4

capacity did not preclude jobs that existed in significant numbers in the national economy. (Tr. 16, Finding 10). Based on these findings, the ALJ concluded that Plaintiff was not under a disability from the alleged onset date through the date last insured. (Tr. 16).

## IV.    Standard of Review

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Thus, it is not this Court's role to "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 (11th Cir. 2021) (cleaned up). Indeed, the Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C § 405(g) (cleaned up).

The substantial evidence standard is "not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It requires "more than a mere scintilla, but less than a preponderance." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam) (internal quotations omitted). Put another way, it requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154 (internal quotation omitted). And, "[i]f the

Commissioner's decision is supported by substantial evidence, we must affirm, even if the proof preponderates against it." *Phillips*, 357 F.3d at 1240 n.8 (internal quotations omitted).

## V.   Plaintiff's Hearing Testimony

At the hearing, Plaintiff testified that he stopped working in 2010 when his back seized up while he was boarding a ship. (Tr. 43). He claimed the pain he had in 2010 is the same pain he has today. (Tr. 44). He described his pain as "a shooting pain through [his] right hip going down [his] leg, and then it'll just spasm." (*Id.*). Plaintiff testified that his doctor told him the pain was caused by arthritis in his lumbar region, and there was nothing he could do about it. (*Id.*). He claimed this pain persisted throughout the relevant time period in 2015 and progressively got worse. (*Id.*).[3]

Plaintiff testified that his doctor did a scan of his abdomen and pelvis in 2015 that revealed arthritis and severe arthropathy. (Tr. 43-45). Plaintiff asked whether there was anything he could do about his pain. (Tr. 48). He was told there was a surgical procedure for his back, but that Plaintiff was not a candidate for the procedure. (*Id.*).

---

[3] The Court refers to the nearly two-week time period between Plaintiff's alleged onset date (June 18, 2015) and his date last insured (June 30, 2015) as the "relevant time period."

Plaintiff further testified that he could carry maybe 15 or 20 pounds without significantly aggravating his back during the relevant time period. (Tr. 51). He estimated he could walk "about . . . a block or two" and stand about "20 to 30 minutes max" before aggravating his back. (Tr. 52). If he was driving, he would have to stop every 30 minutes before getting out to move. (*Id.*). Walking up and down stairs was also challenging. (Tr. 51).

Plaintiff acknowledged that the medical record contains few complaints about his back and neck problems during the relevant time period. (Tr. 49). When asked why there were so few complaints, Plaintiff responded that he did not complain because there was nothing that could be done. (Tr. 49; *see also* Tr. 38). In response to the ALJ's questioning about the lack of medical records from the relevant time period, Plaintiff's counsel explained that he had not received records from a physician who treated Plaintiff during the relevant time period. (Tr. 55-56). The ALJ provided Plaintiff's counsel with additional time to obtain the records. (Tr. 56). Unfortunately for Plaintiff, those records were never received because the physician died, and the records apparently were not retained. (Doc. 13 at 4-5).

## VI.    Discussion

Plaintiff raises two issues on appeal. First, Plaintiff asserts that the ALJ failed to properly evaluate his subjective complaints of pain. (Doc. 13 at 12-23). Second, Plaintiff contends that the ALJ erred in his finding of the transferability of skills

from Plaintiff's past relevant work. (*Id.* at 23-24). Each argument is addressed below.

### A. *Plaintiff's Complaints of Pain*

Plaintiff first argues that the ALJ erred by not properly evaluating his subjective claims of pain and failing to provide sufficient reasons for rejecting Plaintiff's testimony and other evidence in the record. (Doc. 13 at 1). This error, Plaintiff argues, led to an improper residual functioning capacity determination. (*Id.*).

To establish disability based on testimony of pain and other symptoms, the plaintiff must show evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain. *See* 20 C.F.R. § 404.1529(a); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Wilson*, 284 F.3d at 1225.

If the record shows that the claimant has a medically determinable impairment that could reasonably be expected to produce his symptoms (as the ALJ found it did here (Tr. 14)), then the ALJ must "evaluate the intensity and persistence" of the claimant's symptoms to determine how, if at all, the symptoms limit the claimant's

capacity for work.  *See* 20 C.F.R. § 404.1529(c)(1); *see also Strickland v. Comm'r of Soc. Sec.*, 516 F. App'x 829, 831 (11th Cir. 2013).

When determining how the symptoms affect the claimant, the ALJ must evaluate "all the available evidence from [the claimant's] medical sources and nonmedical sources." 20 C.F.R. § 404.1529(c)(1); *see also Strickland*, 516 F. App'x at 831.  The ALJ may consider factors such as: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of the claimant's medication; (5) any treatment other than medication the claimant received for pain relief; (6) any measures the claimant used to relieve his pain or symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to his pain or symptoms.  *See* 20 C.F.R. § 404.1529(c)(3); *see also Strickland*, 516 F. App'x at 831-32.

After considering the evidence, the ALJ should determine whether there are inconsistencies between the claimant's subjective testimony about his symptoms and the rest of the evidence.  *See* 20 C.F.R. § 404.1529(c)(4); *see also Strickland*, 516 F. App'x at 832.  If there are inconsistencies, then the ALJ can discredit the claimant's subjective testimony of pain or other symptoms.  *See Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) ("[C]redibility determinations are the province of the ALJ.").  But, before discrediting a claimant's testimony, the ALJ must "articulate

explicit and adequate reasons" for doing so. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). "While the ALJ does not have to cite particular phrases or formulations, broad findings that a claimant was incredible and could work are, alone, insufficient for [a reviewing court] to conclude that the ALJ considered the claimant's medical condition as a whole." *Strickland*, 516 F. App'x at 832; *see also Miles v. Comm'r of Soc. Sec.*, 652 F. App'x 923, 926 (11th Cir. 2016) ("The ALJ is not required to discuss every piece of evidence so long as the decision does not broadly reject the claimant's case and the decision is sufficient for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole.").

When seeking disability insurance benefits, the claimant bears the burden of proving that he was disabled on or before the date last insured. *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981); *Adamo v. Comm'r of Soc. Sec.*, 365 F. App'x 209, 212 (11th Cir. 2010). "A claimant who becomes disabled after she loses insured status must be denied disability insurance benefits despite her disability." *Thomas-Joseph v. Comm'r of Soc. Sec.*, No. 21-11020, 2022 WL 1769134, at *1 (11th Cir. June 1, 2022). An ALJ may consider medical evidence from after the date last insured to the extent that it sheds any light on the claimant's condition as it existed during the relevant time period. *See Anderson v. Schweiker*, 651 F.2d 306, 310 n.3 (5th Cir. 1981) (stating that a medical examination that occurred after the date last insured "is relevant only for the light it sheds, if any, on [the claimant's] condition

10

as it existed [during the relevant period]"); *see also Henderson v. Berryhill*, No. CV417-225, 2019 WL 1179426, at *3 n.3 (S.D. Ga. Jan 22, 2019) ("Post-date last insured records have little bearing on the disability determination unless plaintiff demonstrates that the post-date evidence relates back to her condition prior to the expiration of her insured status.").

### 1.  Medical Evidence Before & During the Relevant Time Period

As Plaintiff candidly admits, there is "scant" medical evidence prior to his date last insured that supports his claim of disability.  (Doc. 13 at 4).  According to Plaintiff, this is because the doctor Plaintiff was seeing at the time—Dr. James Deas—is deceased and repeated attempts to obtain Plaintiff's medical records were successful.  (Doc. 13 at 4-5); (Tr. 56, 272).  Regardless of the reason, the fact remains that Plaintiff—the party with the burden to show disability during the relevant time period—produced very little medical evidence from before the date last insured to support his claim.

The medical evidence before and during the relevant time period largely consists of a chest x-ray from July 14, 2014, that shows cervical facet joint arthropathy on Plaintiff's left side, (Tr. 305), a June 24, 2015 CT scan of Plaintiff's abdomen and pelvis that shows advanced facet arthropathy in the lower lumbar spine (Tr. 282), and a June 22, 2015, diagnosis of arthritis (Tr. 279).  While these items show that Plaintiff had cervical facet joint hypertrophy and arthritis before his date

last insured, they say nothing about how disabling the conditions were at that time. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) ("[T]he mere existence of [] impairments does not reveal the extent to which they limit [a claimant's] ability to work or undermine the ALJ's determination in that regard."). The records do not include complaints by Plaintiff about these conditions. Indeed, Plaintiff has admitted that he did not complain much about his conditions during the relevant time period. (Tr. 49). Likewise, there is nothing in the medical record showing that the conditions resulted in any restrictions on Plaintiff's ability to work or perform daily tasks during the relevant time period. The medical record also does not contain any treating physician notes or statements from the relevant time period that shed any light on how the conditions were affecting Plaintiff prior to June 30, 2015—the date last insured.

### 2. Medical Evidence After the Date Last Insured

There is more medical evidence in the record after the date last insured. It, of course, is only relevant to the extent that it speaks to the nature and severity of Plaintiff's condition prior to the date last insured. *See White v. Berryhill*, 704 F. App'x 774, 779 (10th Cir. 2017) (stating that "evidence documenting a claimant's condition after her date last insured may be considered if it relates to the insured period"). Although the medical record evidence after the date last insured says a lot

about Plaintiff's condition in later years, it does not say much about Plaintiff's condition during the relevant time period.

On September 27, 2017, an x-ray of Plaintiff's spine revealed "normal alignment of the vertebral bodies in the lumbar spine" and "[n]ormal vertebral body height and disk space." (Tr. 620). The record also noted "degenerative changes with mild marginal osteophytes and facet sclerosis worse in lumbar spine." (*Id.*).

On February 13, 2018, the Gulf Coast Diagnostic Center conducted a bone survey that included an x-ray of Plaintiff's spine and pelvis. (Tr. 638). The survey revealed "mild anterolisthesis of C5 relative to C6," advanced facet arthropathy in Plaintiff's cervical spine, and degenerative changes in the spine. (*Id.*). In June 2018, one medical record shows that Plaintiff had a restricted range of motion. (Tr. 346). Normal lumbar flexion is 90 degrees, yet Plaintiff's lumber flexion was only 45 degrees. (*Id.*). Normal extension is 30 degrees, but Plaintiff's was only 10 degrees. (*Id.*). Normal right and left lateral flexion is 30 degrees, but Plaintiff's was 20 degrees. (*Id.*). At this time, Plaintiff also indicated that he required the use of a walker in the morning during flare-ups and would experience intermittent spasms in his right leg. (*Id.*). He was unable to do basic home activities such as cutting the grass and carrying heavy groceries. (*Id.*). Another medical record from June 2018 shows Plaintiff complained of chronic low back pain and occasional spasms in his

right leg. (Tr. 427). The record also reports that he tried multiple therapies with limited improvement. (*Id.*).

In 2019, the record reflects Plaintiff's complaints of numbness in his leg and low back pain described as a sharp, shooting, stabbing pain that radiates from his lower back to his leg and causes his leg to spasm. (Tr. 760, 908). Plaintiff claimed his low back pain had "been present for many years." (Tr. 760). His nerve conductivity test revealed left and right sided chronic and mild radiculopathy. (Tr. 766). The doctor assessed facet arthropathy and nerve impingement. (Tr. 763).

In August 2019, Plaintiff described his current symptoms in a Supplemental Pain Questionnaire. (Tr. 210-12). Plaintiff stated that he had moderate to severe pain in his shoulders, hands, back and knees. (Tr. 210). His pain was exacerbated by extended standing, walking, and sitting. (*Id.*). He experienced his pain at night and in the mornings for about two hours. (Tr. 211). He claimed moving, heat, and Gabapentin helped to ease the pain, but he could only take limited amounts of Gabapentin because it increased his ammonia. (*Id.*). As for daily activities, he claimed he took care of his personal health by himself (i.e., bathing, hair care, dressing), but did not cook, clean, do laundry, shop, and had trouble sleeping through the night due to his muscle spasms. (*Id.*). Plaintiff's mother provided a Supplemental Third Party Questionnaire in which she stated Plaintiff was unable to use a push-mower and cannot sit, stand, or walk for long periods. (Tr. 215).

In February 2020, the Brain and Spine Center found that Plaintiff had low back pain with severe facet arthropathy with right L5 radiculopathy and documented muscle spasms and complaints of pain in right leg. But the same examination found normal neurological findings, including normal gait. (Tr. 878). On July 9, 2020, a medical record from Florida Cancer Associates lists "lumbar facet arthropathy" as past medical history. The physical exam revealed normal neurologic and musculoskeletal findings. (Tr. 818-19). An examination by the Digestive Disease Center on June 26, 2020, show no complaints of joint pain and a normal neck inspection. (Tr. 931).

While notable, these records are from years after the date by which Plaintiff must prove he was disabled. Although Plaintiff may have had these symptoms and medical findings in 2018-2020, the ALJ did not err by finding that there was insufficient evidence in the record to show that the same symptoms, findings, and restrictions existed on June 30, 2015—the date last insured. (Tr. 44).

3. The ALJ's Rationale

Contrary to Plaintiff's assertion, the ALJ properly evaluated Plaintiff's subjective complaints of pain. Specifically, the ALJ found that although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms during the relevant time period were not

15

supported by evidence in the record.  The ALJ adequately explained the basis for that conclusion.

The ALJ provided at least three reasons for rejecting Plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms.  First, the ALJ noted that Plaintiff's treatment—occurring after the date last insured for which there is evidence in the medical record—was conservative and consisted of "routine medication, injections[,] and physical therapy."  (Tr. 14).  The ALJ's determination is entirely consistent with precedent, as numerous courts have held that a claimant's receipt of "conservative" treatment is something an ALJ may consider when assessing the credibility of a claimant's testimony.  *See Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996); *see also* 20 C.F.R. § 404.1527(c)(2)(ii); *Woodum v. Astrue*, No. 8:07cv404, 2008 WL 759310, at *3 (M.D. Fla. March 20, 2008) (finding the ALJ properly considered that "limited and conservative treatment . . . . is inconsistent with the medical response that would be expected if the physician(s) found the symptoms and limitations to be as severe as reported by the claimant").

Here, the record shows that Plaintiff took ibuprofen, aspirin, occasional muscle relaxers, Gabapentin, and injections to manage his pain.  (Tr. 866, 870, 896-97, 929).[4]  Plaintiff refused opiates and claimed physical therapy provided no help. (*Id.*).  Additionally, as the ALJ recognized, the record fails to show evidence of

---

[4] These records are all post-date last insured.

frequent emergency room visits, extended hospitalization, or instances where Plaintiff appeared to be in acute distress during the relevant time period. (Tr. 14).

Second, the ALJ noted that Plaintiff's neurological and musculoskeletal exam findings were generally minimal. (Tr. 14). He pointed to multiple findings of normal alignment and no swelling or deforming of the back and extremities. (Tr. 818, 866, 870, 896, 906, 931). Multiple examiners did not document complaints of muscle spasms, positive straight leg raise, or abnormal gait, and noted normal sensation, strength, focal deficits, impaired cranial nerves, or reflexes. (Tr. 461, 481, 501, 513, 654, 725, 818, 866, 870, 896, 906, 931); *see also* (Tr. 509) (indicating full range of motion in hips and spine). Furthermore, Plaintiff's symptoms were not so severe that they caused him to appear disheveled or lose weight. (Tr. 461, 654, 818, 866, 870, 896, 906, 931).

The ALJ also cited a 2018 medical record's reference to a 2015 CT scan that showed advanced facet arthropathy of the lumbar spine. The ALJ noted that the same record referenced a 2017 x-ray that showed no reduction in disc space in the lumbar spine. (Tr. 14, 347). The ALJ did not err in concluding that these objective medical findings were inconsistent with Plaintiff's subjective complaints of pain during the relevant time period. *See, e.g.*, *Miles*, 652 F. App'x at 927 (holding substantial evidence supported the ALJ's decision to discredit plaintiff's subjective complaints of pain where the records indicated normal gait, muscle strength, range

of motion, fine and gross coordination, and x-rays of the lumbar and cervical spine);

*Belle v. Barnhart*, 129 F. App'x 558, 560 (11th Cir. 2005) (holding that normal

functional findings and improvement with medication supported the ALJ's decision

to discount plaintiff's subjective complaints).  Additionally, the ALJ stated that the

state agency medical consultant physical exam findings "were generally normal,

aside from cervical and lumbar tenderness and limited range of motion." (Tr. 15).

Third, the ALJ found that Plaintiff's admitted daily living activities suggested

a greater degree of functional capacity than claimed. (Tr. 14).  For instance, Plaintiff

could mow his lawn on a riding lawn mower, could lift 15-20 pounds, attended to

his personal care, and ride in the car for an extended period of time as a passenger

(Tr. 51-52, 211-12).  As the ALJ pointed out, Plaintiff's ability to do these daily

activities undercuts his claim that he was disabled during the relevant time period.

(Tr. 14); *see* 20 C.F.R. § 404.1529(c)(3) (indicating that the ALJ looks to several

factors, including claimant's daily activities when evaluating the claimant's

subjective symptoms); *Dyer*, 395 F.3d at 1212 (recognizing that daily living

activities discredited the claimant's subjective complaints).

At the end of the day, Plaintiff bears burden of proving he was disabled by

producing evidence in support of his claim for disability.  *See* 20 C.F.R.  §

404.112(c); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).  A claimant's

mere testimony is not enough to establish disability—his claims of pain must be

supported by medical and other evidence. *See* 42 U.S.C. § 423(d)(5)(A). There is next to nothing in the medical record from the relevant time period that supports Plaintiff's claim that he was disabled as of June 30, 2015. Thus, the ALJ's decision that Plaintiff failed to establish that he was disabled during the relevant time period is supported by substantial evidence.

### B. Plaintiff's Past Relevant Work and Transferable Skills

Next, Plaintiff argues that the Vocational Expert's (VE) testimony was inconsistent with the Dictionary of Occupational Titles (DOT). According to Plaintiff, this inconsistency requires reversal because the ALJ erroneously found that Plaintiff had transferable skills from his past relevant work when he never actually performed the job as described by the VE or developed the skills described by the VE. (Doc. 13 at 23-24).

Plaintiff's work history consisted of labor-intensive jobs. After retiring as a Navy SEAL, Plaintiff was self-employed from 2001 until 2010 and did various contract work. (Tr. 260). His contract work included running bass boats to stimulate drug runners for U.S. Customs, port security for Homeland Security, and working as a dive consultant providing support and repairs of diving systems. (Tr. 35-37, 41-42). These jobs were physically demanding, often requiring him to lift heavy weight and climb ladders. (Tr. 36-37).

When the VE testified regarding Plaintiff's past relevant work, she noted that his prior positions were "composite positions." (Tr. 59-60). Composite positions are jobs that have "significant elements of two or more occupations and, as such, have no counterpart in the DOT." SSR 82-61; *see also Smith v. Comm'r Soc. Sec.*, 743 F. App'x 951, 954 (11th Cir. 2018). The DOT does not address composite positions. When a claimant's previous work qualifies as a composite position, the ALJ must consider the particular facts of the individual's case to consider whether the claimant can perform his previous work as actually performed. SSR 82-61; *Smith*, 743 F. App'x at 954. Here, the ALJ—relying on testimony from the VE— assessed Plaintiff's past relevant work by looking at DOT descriptions as a guide and using his understanding of the actual work Plaintiff did while on the job. (Tr. 60).

While not always relevant, here Plaintiff's age and education are important to understanding Plaintiff's argument. Plaintiff was 60 years old on his date last insured, classifying him as closely approaching retirement age. (Tr. 15, 159). He has at least a high school education. (Tr. 15, 187). Under the SSA's Medical Vocational Guidelines (the "Grids"), a 60-year-old claimant with a high school education who has a residual functional capacity of sedentary or light work and no transferable skills from skilled or semiskilled past work experience results in a

mandatory "disabled" finding under the Grids.[5]  *See* 20 C.F.R. §§ 201.06, 202.6. Plaintiff argues that the ALJ should have more clearly addressed the tasks actually performed by Plaintiff in his past relevant work to determine if he possessed any transferable skills.

The ALJ found that "[t]ransferability of job skills is not material to the determination of disability because applying the [Grids] directly supports a finding of 'not disabled' whether or not the claimant has transferable job skills."  (Tr. 15, Finding 9) (citing SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).  This finding moots Plaintiff's second argument.  Even if Plaintiff had no transferable skills, Rule 203.07 of the Grids requires a finding of "not disabled" given Plaintiff's age, education, and residual functional capacity.  20 C.F.R. Part 404, Subpart P, Appendix 2.  Accordingly, Plaintiff's second argument fails and does not warrant remand.

---

[5] The Grids provide applicants with an alternative path to qualify for disability benefits when their impairments do not meet the requirements of the listed qualified impairments.  The Grids take into account factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each of these factors can independently limit the number of jobs realistically available to an individual.  Combinations of these factors yield a required finding of "Disabled" or "Not Disabled."  Had the ALJ found that Plaintiff could only perform light or sedentary work, the Grids would have dictated a finding of "Disabled."

## VII.   Conclusion

For the reasons set forth above, the undersigned respectfully

**RECOMMENDS**:

1.     **AFFIRMING** the Commissioner's decision, **DISMISSING** this action

in accordance with this order, and **ENTERING** final judgment pursuant to

sentence four of 42 U.S.C. § 405(g); and

2.     Directing the Clerk of Court to close the case file.

At Pensacola, Florida, this 31st day of August 2022.

/s/ *Zachary C. Bolitho*

Zachary C. Bolitho
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

**This case was referred to the undersigned to address preliminary matters and to make recommendations regarding dispositive motions.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b)(1)(B)-(C); Fed. R. Civ. P. 72(b).**

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control</u>.  An objecting party must serve a copy of the objections on all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**

22